UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

DOMINIQUE J. BROCK                                                               PLAINTIFF
AKA AMERICO J. BROCK

v.                                                    CIVIL ACTION NO. 5:15CV-P83-TBR

LT. HARLAN R. MARTIN *et al.*                                                    DEFENDANTS


MEMORANDUM OPINION AND ORDER

This matter is before the Court on initial review of Plaintiff Dominique J. Brock's *pro se*

complaint pursuant to 28 U.S.C. § 1915A.  For the reasons that follow, a portion of the claims

will continue, and the rest will be dismissed.

I.  SUMMARY OF FACTS AND CLAIMS

Plaintiff, a convicted inmate currently incarcerated at the Kentucky State Penitentiary

(KSP), filed his complaint pursuant to 42 U.S.C. § 1983.  He brings this action against the

following officers at KSP in their individual and official capacities:  Lt. Harlan R. Martin,

C/O Corey J. Kindred, C/O William Long, Lt. Daniel R. Winsett, Three Unknown Apprehension

Officers, and Captain John D. Gibbs Sr.

In the complaint, Plaintiff alleges as follows:

> On the 5th day of Feb. 2015, while housed in 11 Left, cell #15, of
> 3cellhouse, at the [KSP], at or around 11:43 am; while passing my tray back
> through tray slot of my cell door, I was wrongfully accused of "Spilling
> Food" on Officer Kindreds hand.  Now I would like to note that me and this
> officer had words prior to this event, in witch I told him Id file a greivance
> on him.  Officer Kindred . . . went and told Lt. Harland R. Martin
> (Cellhouse Supervisor for 3cellhouse), who went and gathered a 3 man
> apprehencion team, witch consisted of 3 unknown officer (I never got to
> identify Ofc's due to suits and helmets).  Maybe, 30-45 minutes later, Lt.
> Harlan R. Martin and 3 unknown officers approched my door. . . . Lt.
> Harlan R. Martin, who holds video camera approches my door, and tells me

to "strip down to my boxers and back up to the door," (to be cuffed). I complied, stripping down to my boxers, and backing to door, allowing officers to place me in handcuffs. Once in cuffs, my cell door was popped, and I was placed in a set of shackles. I was then practicly snatched from door way (By one of the unknown apprehention officers), by the arm (I belive [it] was my right arm). Lt. Harlan R. Martin holds video camera film the whole incident. I was practicly drug across Teir (11 Left [] a 2nd floor Teir), and down a set of stairs, the officer causing me excruciating pain to my right arm. As he draggs me downstairs. Video camera rolling the whole time. I was then taken to a shower (on 12 Left walk), were I was put into four-point restraints (a restrain chair), I never resisted not once, nor has it been reported that I resisted. I was forced to sit in this restraint chair for 6 hours streight, when yet another apprencion team came and placed me back in handcuffs and shackles, one officer held a tazer gun to my shoulder and told me if I moved, Id be taized. After being placed in handcuffs, and shackles I was practicly drug out of shower, and "Pressed" against a brick wall with a plexi-glass sheild (Officers claim this is institutional policy to do so), allowing the nurse to check my restraints . . . "making sure they wernt too tight," so ther officers say. I was again pulled by the arm, this time by Officer Long, who practicly pulled me up the flight of steps while in handcuffs and shackles across teir (11 Left) to my cell (11 Left cell #15). I was again pressed against a wall come this point, while (unknown) apprehencion officers stripped my cell down (matress, sheets, blankets, ect.) I was then thrown back into my cell, wearing only a pair of boxers; a term refured to as "strip down." Where they say accrding to institutional policy I am to stay in my cell without anything but a pair of boxers. this is also refured to as "Dry-cell." I stayed in my cell, wearing only a pair of boxers, for 24 hours streight, when I was finally givin my property.

Plaintiff further claims, "I was forced to suffer from my injured arm, witch was never tended to by inst. medical staff, I informed officers the whole way too and from the restraint chair that my arm was hurt, and the officer was mishandling me. I sat in my cell for 24 hours . . . in excruciating pain[.]"

Plaintiff claims that the actions taken by Defendants on February 5, 2015, were pursuant to a mandatory institutional policy.

Plaintiff states that he received a write up ("catigory 7 item 1") as a result of the alleged assault on Defendant Kindred and that the write up was sent to the adjustment committee, where it was dismissed.  He claims that he was innocent from the beginning.

Additionally, Plaintiff alleges that he "was rudely mishandled, as a result of Lt. Harlan R. Martins Malaciously prosecuting me, in retallation, or out of vengence for, a civil case I filed against his former employer (and good friend, as he says), case # 5:14CV-00210."  Plaintiff further alleges that Defendant Gibbs allowed his write-up to continue without thoroughly investigating the situation.  He claims, "I've spoke with Captain John D. Gibbs before, he has a negitive atitude against me, because either Im a black male under the age of 23, or if you ask me witch he's mentioned before, Philip Parker is his former employer.  I also have a suit against [] Parker (5:14CV-00210)."  Plaintiff claims that the lawsuit "was in the system at the time . . . Gibbs [] entered [the write up] into the system on the 6th day of Feb. 2015."  Plaintiff also states that Defendant Winsett was appointed to further investigate the write-up.  He states that he does not believe he was given a thorough investigation due to Defendant Winsett's "'Loyalty' to his former employer and 'good friend'" Parker, against whom Plaintiff had filed an action.  Plaintiff similarly maintains that Defendant Long, "who malalicously drug me back up the stairs," is also a "good friend" of Parker's and that "he too has made it a point to make it clear to me 'his loyalty' to his former employer."

Finally, Plaintiff alleges that Defendant Kindred, upon receiving word that Plaintiff was filing a lawsuit regarding the February 5, 2015, incident, "Walked pass my cell door [] on the 26th day of March 2015 . . . [and] called me a 'Punk Bitch,' told me im 'a rat,' and anounced that he'd fund my 'hit' on the walk."  Plaintiff reports that Defendant Kindred "while serving lunch

trays on 3-25-15/3-26-15, stopped to serve trays while suited in gloves, hair net and beard net, to

unfasion another inmate from handcuffs and shackles, patting him down in the process, and

returned to serve trays."  He claims that he asked Defendant Kindred "to switch gloves out, witch

is required by CPP, he refused."

Plaintiff alleges violations of the Fourth, Eighth, and Fourteenth Amendments to the U.S.

Constitution and Section 17 of the Kentucky Constitution.  He additionally alleges the following

claims arising out of the foregoing allegations:  excessive force; assault and battery; gross

neglect; negligent hiring and retention; intentional infliction of emotional distress; criminal abuse

under Ky. Rev. Stat. § 508.100; assault 1st under Ky. Rev. Stat. § 508.010; assault 2nd under Ky.

Rev. Stat. § 508.020; false arrest, imprisonment, and apprehension; and malicious prosecution.

As relief, Plaintiff seeks monetary damages and injunctive relief ordering that Defendants

be held accountable and that "Ky DOC policy be revised."

## II.  STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers,

and/or employees, this Court must review the instant action under § 1915A.  Under

§ 1915A, the Court must review the complaint and dismiss the complaint, or any portion of the

complaint, if it determines that the complaint is frivolous or malicious, fails to state a claim upon

which relief may be granted, or seeks monetary relief from a defendant who is immune from

such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604, 608 (6th Cir.

1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as

frivolous where it is based on an indisputably meritless legal theory or where the factual

contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a

claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff

and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*,

561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)

(citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 555, 557).

### III.  ANALYSIS

#### A.  *42 U.S.C. § 1983 claims*

"Section 1983 creates no substantive rights, but merely provides remedies for

deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d

340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v.

Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502,

504 (6th Cir. 1991).

### 1. *Claims for Damages Against Defendants in Official Capacity*

Defendants are state officials acting under color of state law.  The damages claims against them in their official capacity are barred for two reasons.  First, state officials sued in their official capacity for money damages are not "person[s]" subject to suit under § 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution.  *Will v. Mich. Dep't of State Police*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity.").  Accordingly, the official-capacity claims for damages against all Defendants will be dismissed.

### 2. *Fourth Amendment Claims – False Arrest/Imprisonment/Apprehension*

The Fourth Amendment prohibits unreasonable searches and seizures.  Plaintiff was incarcerated at the time the events about which he complains occurred.  Attempting to subdue him in his prison cell and in a restraint chair does not constitute a seizure for purposes of the Fourth Amendment.  *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) (recognizing that the Supreme Court "confirmed a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration"); *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 718 (W.D. Pa. 2007) (finding that the plaintiff was not "seized" for purposes of the Fourth Amendment since he was incarcerated at the time the alleged wrongful events took place).  Further, the Supreme Court has found that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984).  Plaintiff's Fourth Amendment false arrest/imprisonment/apprehension claims, therefore, will be dismissed.

### 3. *Fourteenth Amendment – Disciplinary Charge*

"Prisoners claiming a due process violation under the Fourteenth Amendment must demonstrate that they have been deprived of a protected liberty or property interest by arbitrary governmental action." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995). Plaintiff wholly fails to allege the deprivation of a property interest. To the extent he alleges deprivation of a liberty interest, "[s]uch a liberty interest can arise from the Constitution," *id.*, and "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). These state-created liberty interests, however, "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (citations omitted). However, a restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest. *Id.* at 487.

While Plaintiff alleges a false write-up was brought against him, he fails to allege the deprivation of any liberty interest because he states that the write-up was dismissed. Therefore, no restraint was imposed as a result of his disciplinary charge, and the due process claim must be dismissed.

### 4. *Eighth Amendment – March 2015 Incidents*

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In order to state a valid conditions-of-confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they

7

constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

As to Plaintiff's claims that Defendant Kindred verbally harassed and threatened him in March 2015, verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim. *Id.* at 955; *see also Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").

Additionally, Plaintiff's allegation that Defendant Kindred refused to change gloves while serving food trays on two occasions in March 2015 also fails support an Eighth Amendment claim.  Plaintiff fails to allege facts showing the denial of the necessities of life and fails to allege any harm as a result of Defendant not changing gloves.

For these reasons, Plaintiff's Eighth Amendment claims against Defendant Kindred based on the March 2015 incidents will be dismissed.

### 5. Eighth and Fourteenth Amendment Claims – Excessive Force, Conditions of Confinement, and Placement in Four-Point Restraints

Upon consideration, the Court will allow the Eighth and Fourteenth Amendment claims regarding the February 5, 2015, incident to continue against Defendants Kindred, Martin, Long, and the Three Unknown Apprehension Officers in their individual and official capacities.

### 6. *Retaliation*

Plaintiff alleges that Defendants Martin, Gibbs, and Winsett, retaliated against him for filing a lawsuit against Philip Parker, and he alleges that Defendant Kindred retaliated against him for filing the instant lawsuit.  The Court will allow the retaliation claims to continue against those Defendants in their individual capacity.

### B.  *State-Law Claims*

Plaintiff alleges excessive force; various negligence claims; assault and battery; intentional infliction of emotional distress; false arrest, imprisonment, and apprehension; and malicious prosecution.  The Court will exercise supplemental jurisdiction over the state-law claims and allow them to proceed past initial review.

## IV.  ORDER

For the foregoing reasons,

**IT IS ORDERED** that the official-capacity claims for damages against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and (2) for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants immune from such relief, respectively.

**IT IS FURTHER ORDERED** that the Fourth Amendment false arrest/imprisonment/ apprehension claims; the Fourteenth Amendment claim regarding the disciplinary charge; and the Eighth Amendment March 2015 claims against Defendant Kindred based on March 2015 incidents are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the following § 1983 claims shall proceed beyond initial review:  the Eighth and Fourteenth Amendment claims regarding the February 5, 2015,

9

incident against Defendants Kindred, Martin, Long, and the Three Unknown Apprehension

Officers in their individual and official capacities; and the retaliation claims against Defendants

Martin, Gibbs, Winsett, and Kindred in their individual capacity.  The following state-law claims

shall proceed against all Defendants for civil damages:  excessive force; various negligence

claims; assault and battery; intentional infliction of emotional distress; false arrest,

imprisonment, and apprehension; and malicious prosecution.  In permitting these claims to

continue, the Court passes no judgment on their merit and ultimate outcome.

A separate Scheduling Order will be entered to govern the development of the continuing

claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.005